IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

CARLEN B. SMITH                                                          PLAINTIFF

V.                              NO. 12-2151

CAROLYN W. COLVIN,[1]
Acting Commissioner of the Social Security Administration               DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Carlen B. Smith, brought this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security (Commissioner), ceasing her entitlement to supplemental security income (SSI) benefits under Title XVI of the Social Security Act (Act), 42 U.S.C. § 1382c(a)(3)(A), as of October 1, 2009.

**I.     Procedural Background:**

Plaintiff was initially found disabled as of October 1, 1993, by the Social Security Administration, due to meeting the listing for mild mental retardation. (Tr. 10, 43-44). Her disability was determined to have continued in a determination dated July 1, 2001. (Tr. 12). This is known as the "comparison point decision" or CPD. (Tr. 12). On October 8, 2009, Plaintiff was notified that she no longer qualified for SSI. (Tr. 45-47). Contained in that notice was a

---

[1] Carolyn W. Colvin, has been appointed to serve as acting Commissioner of Social Security, and is substituted as Defendant, pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure.

paragraph advising Plaintiff as follows:

> You can have a lawyer, friend, or someone else help you. There are groups that can help you find a lawyer or give you free legal services if you qualify. There are also lawyers who do not charge unless you win your appeal. Your local Social Security office has a list of groups that can help you with your appeal.
>
> If you get someone to help you, you should let us know. If you hire someone, we must approve the fee before he or she can collect it.

(Tr. 46-47).

Plaintiff attained the age of 18, in 2008. A Plaintiff's childhood award is to be redetermined when he or she reaches age 18 by applying the criteria used in determining initial eligibility for individuals who are age 18 or older. 42 U.S.C. § 1382c(a)(3)(H)(iii), 20 C.F.R. § 416.987(b). The regulations provide that the claimant may be found not now disabled even though he or she was previously found disabled. 20 C.F.R. § 416.987(a)(2).

The Social Security Administration conducted a redetermination review, in which it found that Plaintiff's health had improved since the CPD in July 2001, and Plaintiff was no longer disabled as of October 1, 2009. (Tr. 45). Plaintiff requested a reconsideration of the cessation of benefits, but failed to appear before the disability hearing officer. (Tr. 53-54). On December 6, 2010, the disability hearing officer upheld the cessation of benefits. (Tr. 53-60). Plaintiff then requested a hearing by an ALJ. (Tr. 63-66).

On May 12, 2011, a hearing was held before an ALJ. (Tr. 20-42). At that hearing, Plaintiff was not represented by counsel. On July 27, 2011, the ALJ issued an unfavorable decision, determining that at the time of the CPD, Plaintiff had the following medically determinable impairments: mental retardation and speech and language delays. (Tr. 12). He

AO72A
(Rev. 8/82)

further held that the medical evidence established that, as of October 1, 2009, Plaintiff had the following medically determinable impairments: personality disorder and mood disorder. (Tr. 12). However, the ALJ further found that since October 1, 2009, Plaintiff did not have an impairment or combination of impairments that met or equaled the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 12-13). The ALJ found that beginning on October 1, 2009, based on the current impairments, Plaintiff had the residual functional capacity (RFC) to:

> perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant can understand, remember, and carry out simple, routine, and repetitive tasks. The claimant can respond appropriately to usual work situations and can interact appropriately with supervisors. The claimant can have incidental contact with co-workers but no contact with the general public.

(Tr. 14).

With the help of a vocational expert (VE), the ALJ determined that Plaintiff had no past relevant work, but that beginning on October 1, 2009, there were jobs Plaintiff would be able to perform, such as production worker, e.g. bench assembler; house cleaners and maids, e.g. laundry worker; and meat cutter, e.g. eviscerator. (Tr. 18-19).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied the request on June 2, 2012. (Tr. 1-3). Subsequently, Plaintiff filed this action. (Doc. 1). This case is before the undersigned pursuant to the consent of the parties. (Doc. 5). Both parties have filed appeal briefs, and the case is now ready for decision. (Docs. 12, 13).

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs, and are repeated here only to the extent necessary.

**II.      Applicable Law:**

A Social Security claimant has a continuing burden to demonstrate that she is disabled, and courts should draw no inference from the fact that a claimant was previously granted benefits. See Nelson v. Sullivan, 946 F.2d 1314, 1315 (8th Cir. 1991). Once the claimant meets this initial responsibility, however, the burden shifts to the Commissioner to demonstrate that the claimant is not disabled. Lewis v. Heckler, 808 F.2d 1293, 1297 (8th Cir. 1987).

"When benefits have been denied based on a determination that a claimant's disability has ceased, the issue is whether the claimant's medical impairments have improved to the point where he is able to perform substantial gainful activity." Delph v. Astrue, 538 F.3d 940, 945 (8th Cir. 2008). "This 'medical improvement' standard requires the Commissioner to compare a claimant's current condition with the condition existing at the time the claimant was found disabled and awarded benefits." Id. "The continuing disability review process involves a sequential analysis prescribed in 20 C.F.R. § 404.1594(f)." Id. [2]

**III.     Discussion:**

Plaintiff raises the following issues on appeal: 1) Whether Plaintiff was given adequate notice of her right to representation; 2) Whether substantial evidence supports the ALJ's finding that Plaintiff's impairments medically improved as of October 1, 2009; 3) Whether substantial

---

[2] The steps are as follows: 1) whether the claimant is currently engaging in substantial gainful activity; (2) if not, whether the disability continues because the claimant's impairments meet or equal the severity of a listed impairment, (3) If not, whether there has been medical improvement, (4) if there has been a medical improvement, whether it is related to the claimant's ability to work, (5) if there has been no medical improvement or if the medical improvement is not related to the claimant's ability to work, whether any exception to medical improvement applies, (6) if there is medical improvement and it is shown to be related to the claimant';s ability to work, whether all of the claimant's current impairments in combination are severe, (7) if the current impairment or combination of impairments is severe, whether the claimant has the residual functional capacity to perform any of this past relevant work activity, and (8) if the claimant is unable to do work performed in the past whether the claimant can perform other work. Delph, 538 F.3d at 945-946; citing 20 C.F.R. § 404.1594(f).

evidence supports the ALJ's RFC determination.

    A.    **Adequate Notice of Right to Representation:**

Plaintiff argues that the ALJ committed legal error by failing to comply with the Social Security Administration Hearings, Appeals and Litigation Law Manual (HALLEX)[3] by taking Plaintiff's testimony before advising Plaintiff of her right to counsel.

Approximately half way through the hearing, the ALJ stated:

> Q. – I see you're here today without an attorney, I know our letter talked to you – that set up this hearing talked to you about an attorney, we can – we can do it one of three ways, we can continue to visit with today and I'll get some more information from you and if you decide to get an attorney we'll stop and kind of regroup and basically allow the attorney to participate in the case, or we can just stop right now and not do anything else until you get an attorney –
> A. Uh-huh.
> Q. – if you want to get an attorney, or we can just proceed without one and you can tell me that you're not interested in getting one and you want to represent yourself –
> A. Uh-huh.
> Q. –Okay? Have you – did you realize that we'd be talking about this part of if before you came in here? I mean our letter said that, about the attorney, so you probably know you could have one if you wanted one, is that –
> A. Well, I never knew how to get one–
> Q. Okay.
> A. –so I'm – I'm new to all this so –
> Q. Okay, my recommendation would be, that since we're here, court reporter, me, you, we can continue to talk about this and if you –
> A. Uh-huh.
> Q. – and I won't make a decision right away because there maybe some more records I need to get, we'll find out about that –
> A. Uh-huh.
> Q. – but we can continue to visit today about this and if you decide to get an attorney that attorney will contact me, we'll kind of put everything on hold –

---

[3]"Hallex provides procedural guidance for processing and adjudicating slaims at the hearing and Appeals Council levels." Elllis v. Astrue, No.06-3357-01-S-RED, 2008 WL 351687, n.2 (E.D.Mo. Sept. 25, 2008).

>A. Uh-huh.
>Q. – until we can, the three of use, then can then get together, is that acceptable –
>A. Yeah –
>Q. –to you to do that?
>A.–that's fine.
>Q. Okay, that way we can at least spend our time wisely today.
>A. Uh-huh.

(Tr. 32-34).

The Eighth Circuit has not specifically ruled on the effect of a violation of HALLEX. However, in Elllis v. Astrue, No.06-3357-01-S-RED, 2008 WL 351687 (E.D.Mo. Sept. 25, 2008), the Court addressed this issue:

>While the Eighth Circuit has not specifically ruled on the effect of a violation of HALLEX, other Circuits have. The Ninth Circuit believes that HALLEX is an internal manual with no legal force. (Citations omitted). The Fifth Circuit held in Newton v. Apfel, 209 F.3d 446 (5th Cir. 2000), that although HALLEX does not carry the authority of law,"'where the rights of individuals are affected, an agency must follow its own procedures, even where the internal procedures are more rigorous than otherwise would be required,'" and should prejudice result from a violation of an agency's internal rules, the result cannot stand. (Footnote and citations omitted).
>
>This Court believes that the Eighth Circuit would hold that HALLEX does not have the force of law. Cf. Shontos v. Barnhart, 328 F.3d 418, 424 n.7 (8th Cir. 2003)(the Social Security Administration's Program Operations Manual System (POMS) guidelines do not have legal force and do not bind the Commissioner; still, an ALJ should consider them).

Ellis, 2008 WL 351687 at *15-16; See also Lovett v. Astrue, No. 4:11 CV 1271 RWS, 2012 WL 3064272 (Remand is only necessary where the ALJ's error jeopardizes the existence of substantial evidence to support the ALJ's decision, or where the ALJ applies the wrong legal standard). The undersigned believes that the Eighth Circuit would hold that HALLEX does not have the force of law.

In addition, as indicated earlier in this opinion, the October 8, 2009 notice sent to Michelle Lynn Smith for Carlen Breunder Smith advised that Plaintiff could have a lawyer, friend, or someone else help her. (Tr. 45-47). In the Notice of Reconsideration sent to Plaintiff dated December 6, 2010, Plaintiff was advised of her right to a lawyer. (Tr. 62). Finally, in a letter to Plaintiff dated February 10, 2011, from the SSA, in response to Plaintiff's request for a hearing before an ALJ, Plaintiff was advised as follows:

> You may choose to be represented by a lawyer or other person. A representative can help you get evidence, prepare for the hearing, and present your case at the hearing. If you decide to have a representative, you should find one immediately so that he or she can start preparing your case.
>
> Some private lawyers charge a fee only if you receive benefits. Some organizations may be able to represent you free of charge. Your representative may not charge or receive any fee unless we approve it. We are enclosing a list of groups that can help you find a representative.

(Tr. 65). The Eighth Circuit has held that such notice is sufficient to advise a claimant of her right to counsel. Huddle v. Barnhart, 143 Fed. Appx. 721, 722 (8th Cir. 2005); see Wingert v. Bowen, 894 F.2d 296, 298 (8th Cir. 1990)(notice of hearing properly advised claimant of right to counsel).

Based upon the foregoing, as well as those reasons given in Defendant's well-stated brief, the Court finds there is substantial evidence to support the fact that Plaintiff received adequate notice of her right to counsel.

**B.     RFC Determination:**

RFC is the most a person can do despite that person's limitations. 20 C.F.R. §404.1545(a)(1). It is assessed using all relevant evidence in the record. Id. This includes

medical records, observations of treating physicians and others, and the claimant's own description of her limitations. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). "The ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." Id.

The ALJ found that beginning on October 1, 2009, based on the current impairments, Plaintiff had the RFC to perform a full range of work at all exertional levels with certain limitations. (Tr. 14-16). The ALJ addressed Plaintiff's activities of daily living, her social functioning, concentration, persistence or pace, and the fact that Plaintiff had no episodes of decompensation. (Tr. 12-13). He also addressed the medical records, noting the Intellectual Assessment of Keith Norwood, P.E., and the Mental Diagnostic Evaluation of Dr. Robert L. Spray, Jr., Ph.D, PA, Psychologist (Tr. 15). He also addressed the treatment records of Western Arkansas Counseling & Guidance Center, and found that the severity of Plaintiff's alleged limitations was not supported by the record. (Tr. 16). The ALJ reported:

> The claimant alleges that she cannot work because she is unable to cope with the pressure of working with others; however, it appears the claimant is able to be around others when it suits her. (Exhibit 7F/3). The claimant was able to attend and graduate from a public high school. She was able to initiate and sustain a relationship with her child's father for

>approximately one year. (Exhibit 3F/4.) She also has a 2-year old child, for whom she is the sole provider. Based upon the claimant's assertions, the medical opinions, and her demonstrated ability to interact with others; the undersigned finds that the claimant's residual functional capacity should include work which will require her to interact with supervisors, but will require only incidental contact with co-workers, and no contact with the general public.

(Tr. 16).

At the time of Plaintiff's hearing before the ALJ, she had been working part-time at Tips Insurance since October 2010. (Tr. 25-29). See Goff v. Barnhart, 421 F.3d 785, 793 (8th Cir. 2005)(holding that working after the onset of an impairment is some evidence of an ability to work). In addition, Plaintiff received relatively conservative treatment for her allegedly disabling mental disorder. In fact, no medications were prescribed to treat her alleged attention deficit hyperactivity disorder.

With respect to the weight given to the various medical opinions, the ALJ first noted that Plaintiff's credibility was diminished because there was evidence that she was less than fully cooperative or put forth less than maximal effort during her consultative examinations. (Tr. 16). Dr. Spray conducted a Mental Diagnostic Evaluation on June 16, 2009, and noted that Plaintiff seemed aloof, she "fiddled with her cell phone off and on during the exam," and was "detached from the evaluation and seemed uninterested." (Tr. 235). He thought "perhaps" Plaintiff was functioning within the mentally retarded range, but also noted that Plaintiff was irritable and poorly motivated to do much of anything. (Tr. 237). Dr. Spray reported that Plaintiff appeared to be functioning in possibly the borderline range of intelligence, and that her lack of involvement in the exam probably colored the assessment of cognitive functioning. (Tr. 237). He concluded that she did not give adequate effort and only passive cooperation, and that

symptoms were difficult to evaluate because of her aloof and detached manner. (Tr. 238).

On September 19, 2009, Keith Norwood, M.S., conducted an Intellectual Assessment. (Tr. 248-251). He noted that Plaintiff's was "cooperative within limits but his effort on tasks was poor,"[4] and that Plaintiff took a nonchalant attitude toward testing. (Tr. 248). Mr. Norwood reported that the given results were believed to underestimate Plaintiff's level of functioning. (Tr. 248). He noted that Plaintiff terminated effort following minimal concentration and had no motivation to succeed with any task and got discouraged easily. (Tr. 250). Mr. Norwood reported that the obtained results were believed to be invalid because of Plaintiff's poor effort on subtest items, and that Plaintiff did not appear interested in completing tasks and would give up easily. (Tr. 250). He concluded that the given data was not supportive of a diagnosis associated with mental retardation. (Tr. 250).

The ALJ gave some, but not significant weight to the opinions of Dr. Spray and Mr. Norwood, since both indicated that Plaintiff's lack of motivation likely skewed the results of their examinations. (Tr. 17). The ALJ also gave some, but not significant weight to the Mental RFC Assessment and Psychiatric Review Technique form completed by Dr. Winston Brown, based upon additional evidence received at the hearing level. (Tr. 17). In his assessments, Dr. Brown found that Plaintiff was moderately limited in seven categories and not significantly limited in twelve categories. (Tr. 258). He concluded that Plaintiff was able to perform work where interpersonal contact was incidental to work performed, e.g. assembly work; where complexity of tasks was learned and performed by rote, with few variables, and little judgment, and where supervision required was simple, direct and concrete (unskilled). (Tr. 258). In his

---

[4]The Court notes that throughout his assessment, Mr. Norwood referred to Plaintiff as a male.

Psychiatric Review Technique form, Dr. Brown found that Plaintiff had a mild degree of limitation in restriction of activities of daily living, and a moderate degree of limitation in difficulties in maintaining social functioning and difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation, each of extended duration. (Tr. 270).

The ALJ gave little weight to the opinions expressed by the treating professionals at Western Arkansas Counseling & Guidance Center, noting that the actual treatment visits had been relatively infrequent, that Plaintiff was not prescribed any medication for her attention-deficit hyperactivity disorder, and no reason was given as to why medication was not prescribed. (Tr. 17).

The ALJ gave significant weight to the opinions provided by Plaintiff's teacher and school officials. (Tr. 17). He found their opinions to be consistent with the record as a whole, giving less weight to the school records dated 1997 and 2003, because additional evidence received into the record at the hearing convinced him that Plaintiff's limitations had changed since that time. (Tr. 17).  On April 13, 2009, Plaintiff's teacher indicated that Plaintiff had no problems acquiring and using information, attending and completing tasks, interacting and relating with others, moving about and manipulating objects, or caring for herself. (Tr. 165-168).

Based upon the foregoing, as well as those reasons given in Defendant's well-stated brief, the Court finds there is substantial evidence to support the ALJ's RFC assessment.

**IV.    Conclusion:**

Accordingly, having carefully reviewed the record, the Court finds there is substantial evidence to support the ALJ's decision that Plaintiff's disability ended on October 1, 2009, and that Plaintiff has not become disabled again since that date, and thus the decision is hereby

affirmed. The undersigned further finds that Plaintiff's Complaint should be, and is hereby, dismissed with prejudice.

IT IS SO ORDERED this 14th day of August, 2013.

/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

.

AO72A
(Rev. 8/82)